William L. TIPPENS, deceased, Nell P. Tippens, Individually and as widow of William L. Tippens, Plaintiff-Appellant,

v.

The CELOTEX CORPORATION, et al., Defendant-Appellees.

No. 84-8312.

United States Court of Appeals, Eleventh Circuit.

Dec. 9, 1986.

Roger B. Lane, C. Darryl Gossett, Brunswick, Ga., for plaintiff-appellant.

Darlene Y. Ross, Savannah, Ga., for defendants-appellees.

Before HILL, VANCE, Circuit Judges, and BROWN *, Senior Circuit Judge.

* Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, Sitting By Designation.

JOHN R. BROWN, Senior Circuit Judge:

Celotex Corporation's Motion for Summary Judgment was granted in this case when a non-party affiant's deposition was inconsistent with his prior affidavit. The District Court held the inconsistencies created a sham affidavit and considered only the deposition testimony in granting summary judgment. We do not find the original affidavit inherently inconsistent with the deposition and hold that any question of credibility or weight to be given to the evidence resulting from variances between an affidavit and deposition is a question of fact for the trier of fact, be it the judge or jury. We therefore, reverse the District Court's grant of summary judgment and remand for further proceedings to consider all of the evidence including both the deposition and the affidavit.

Mrs. Nell Tippens brought suit against Celotex Corporation (Celotex) individually and on behalf of her deceased husband. William Tippens worked at Brunswick Shipyard as a pipefitter on ships of the United States Navy and the Merchant Marines, among others. After serving in the Army, and holding several other jobs, Mr. Tippens worked for twenty-seven years as a supervisor for ITT Rayonier in Jesup, Georgia.

Mrs. Tippens alleges that while her husband was employed as a supervisor at ITT Rayonier and as a pipefitter at Brunswick Shipyards, he was exposed to asbestos containing products that were mined, manufactured, and sold by Celotex.[1]

In response to Celotex's motion for summary judgment, Tippens submitted the affidavit of a coworker, Frank McIntyre, which stated that McIntyre used several products, including those of the defendant Celotex, while working in close proximity to William Lawrence Tippens.[2] The District Court initially denied Celotex's motion based on McIntyre's affidavit.

Celotex, along with the other defendants, deposed Frank McIntyre. During his deposition, McIntyre was unable to pinpoint any specific instances where he worked in close proximity to William Tippens while using the defendant's product. McIntyre was also unable to identify any specific instances when he used Celotex's asbestos containing products or to identify which Celotex products contained asbestos. However, McIntyre was able to state that he did use Celotex's products. The apparent inconsistency between the affidavit and

---

1. Tippens originally brought suit against twenty-one defendants including Celotex. The other original defendants are no longer a part of this suit due to settlements and grants of summary judgment. Because Celotex is the only remaining defendant, the District Court's grant of summary judgment is a final judgment for the purposes of appeal.

2. The McIntyre affidavit states:

1.
This affidavit is given upon my personal knowledge and for use in the above-captioned matter in opposition to defendants Motions for Summary Judgment.
2.
From 1953 until May, 1983, I was employed at Rayonier, Inc., in Jesup, Georgia, as a pipefitter and insulator.
3.
While employed at Rayonier, Inc., in Jesup, Georgia, I worked with and around William Lawrence Tippens.
4.
William Lawrence Tippens' job at Rayonier was Supervisor of the maintenance crew and

as such he worked in close proximity to me during the thirty years I was employed at Rayonier.
5.
While working in close proximity to William Lawrence Tippens I used the following asbestos containing products which produced dust breathed by William Lawrence Tippens and myself:

a) Armstrong asbestos pipe insulating;

b) Philip Carey asbestos cement and Carey asbestos pipe covering; [Philip Carey is the predecessor company to Celotex Corporation.]

c) Raybestos-Manhattan asbestos cloth and Raybestos-Manhattan asbestos gasket material;

d) Forty-Eight Insulation, Hi Temp asbestos Insulation Cement;

e) Pabco asbestos pipe insulation;

f) Owens-Corning Kaylo asbestos pipe insulation; and

g) Numerous other asbestos containing products.

deposition was merely an inability to recall specific times, places, and situations.[3]

Based on the inconsistencies in McIntyre's deposition, Celotex moved for reconsideration of their motion for summary judgment. The District Court reconsidered and granted the motion.

### It's Been Said Before[4]

■ The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c). The District Court shall consider all evidence in the record when reviewing a motion for summary judgment —pleadings, depositions, interrogatories, affidavits, etc.—and can only grant summary judgment "if *everything* in the record ... demonstrates that no genuine issue of material fact exists." *Keiser v. Coliseum Properties, Inc.,* 614 F.2d 406, 410 (5th Cir.1980) (emphasis in original).[5] "Summary judgment is a lethal weapon, and courts must be mindful of its aims and targets and beware of overkill in its use." *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 612 (5th Cir.1967). "The principal function of the motion for summary judgment is to show that one or more of the essential elements of a claim or defense ... is not in doubt and that, as a result, judgment can be rendered as a matter of law." Louis, *Federal Summary Judgment Doctrine: A Critical Analysis,* 83 Yale L.J. 745, 747 (1974).

■ If one or more of the essential elements is in doubt, then summary judgment must not be granted. Summary judgment is such a lethal weapon, depriving a litigant of a trial on the issue, caution must

---

**3.** McIntyre's deposition reveals that he did not recant the statements in his prior affidavit that he used the products manufactured by Celotex around Mr. Tippens. The following deposition excerpts demonstrate his inability to recall specific incidents which support his general recollection.

> Q: ... You said you used some Philip Carey pipe covering—
> A: Uh-huh.
> Q: —while you were out there. Do you remember the first time you used Philip Carey covering?
> A: No. It's just like I told him. We didn't get big loads of that either.... I don't know.
>
> . . . . .
>
> Q: So do you remember the containers that it came in?
> A: It was cardboard boxes just like the others come in.
> Q: Was it a pre-formed pipe covering?
> A: Pre-molded?
> Q: Yes.
> A: Yeah.
> Q: Do you remember any particular brand name that was on it?
> A: No, just—
> Q: As an insulator and pipefitter, you know that Philip Carey made a lot of pipe coverings over the years; don't you?
> A: Yeah. I guess so. Yeah.
>
> . . . . .
>
> Q: You don't know whether this particular product had asbestos in it; do you?
> A: No. No. I sure don't.
>
> . . . . .

> [Celotex's counsel began addressing the specifics of the affidavit.]
> Q: Now on the pipe covering—
> A: Now, I remember that.
> Q: You remember some kind of Carey pipe covering?
> A: Right.
> Q: But to the extent that this specifies asbestos pipe covering, you can't testify today—
> A: Well, not for asbestos, no.
>
> . . . . .
>
> Q: Let me ask you this final question, Mr. McIntyre: With respect to the various products you have told us about today ... do you have any specific recollection of a time when you used any of those products and Mr. Tippens was in your proximity?
> A: I couldn't pinpoint it, no. No.

Deposition of Frank McIntyre at 31–35, 42–43; *see also* Supplemental Brief for Appellant at 4.

**4.** It appears that Celotex is intent not only in escaping judgment but also on creating its own treatise on summary judgment. *See, e.g., Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Lane v. Celotex Corp.,* 782 F.2d 1526 (11th Cir.1986); *Lee v. Celotex Corp.,* 764 F.2d 1489 (11th Cir.1985); *Odum v. Celotex Corp.,* 764 F.2d 1486 (11th Cir. 1985); *Barwick v. Celotex Corp.,* 736 F.2d 946 (4th Cir.1984).

**5.** The Eleventh Circuit, in an en banc decision, *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

be used to ensure only those cases devoid of any need for factual determinations are disposed of by summary judgment. Summary judgment should be granted only when the evidence produced by the non-moving party, when viewed in a light most favorable to that party, fails to establish a genuine issue. *Celotex Corp. v. Catrett,* — U.S. —, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986); *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 146, 154 (1970).

This court decided an almost identical case against the same defendant earlier this year. In *Lane v. Celotex Corp.,* 782 F.2d 1526, 1528 (11th Circuit 1986), we stated:

> [T]he district court must not resolve factual disputes by weighing conflicting evidence, *see Warrior Tombigbee Transportation Company v. M/V NAN FUNG,* 695 F.2d 1294, 1298 (11th Cir. 1983), since it is the province of the jury to assess the probative value of the evidence, *see Odum v. Celotex Corp,* 764 F.2d 1486, 1488 (11th Cir.1985). The district court must not "assess[ ] the probative value of any evidence presented to it, for this would be an unwarranted extension of the summary judgment device." *Gauck v. Meleski,* 346 F.2d 433, 436 (5th Cir.1965).

### The Sham Affidavit Concept

The Second Circuit announced the proposition that a court may disregard an affidavit as a matter of law when it determines that the affidavit is a sham in *Perma Research and Development Co. v. Singer Co.,* 410 F.2d 572 (2nd Cir.1969). As recounted by this court in *Lane,* the Second Circuit's decision in *Perma Research* involved a plaintiff who claimed fraud but disclosed no specifics of the fraud claim during extensive depositions. He later filed an affidavit which disclosed the specifics and thus was blatantly inconsistent with his earlier affidavit. "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own

prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Perma Research* at 578. The Second Circuit determined that any issue raised by affidavit which was flatly contradicted by an earlier deposition was so suspect of untruthfulness as to be disregarded as a matter of law.

The Eleventh Circuit accepted the proposition that an affidavit can be disregarded when it constitutes a sham in *Van T. Junkins and Associates v. U.S. Industries,* 736 F.2d 656 (11th Cir.1984). In that case the President of Van T. Junkins "made crystal clear in three places in the deposition" that there was no condition attached to their agreement that he was required to purchase one of their buildings in order to be awarded a dealership. *Id.* 657. He later submitted an affidavit stating that he would be awarded the dealership only if he would purchase one of their buildings. This court held that the affidavit should be disregarded as a sham. Its flat contradiction to the earlier deposition was unexplained and therefore was inadequate to raise a genuine issue of fact which was denied to exist by the earlier deposition.

### Discrepancies: Credibility or Sham

A definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence. "An opposing party's affidavit should be considered although it differs from or varies [from] his evidence as given by deposition or another affidavit and the two in conjunction may disclose an issue of credibility." 6 Moore's Federal Practice ¶ 56.15[4] (2d ed. 1985) (footnote omitted).

The purpose of summary judgment is to separate real, genuine issues from those which are formal or pretended. To allow every failure of memory or variation in a witness's testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in

time and with which words the witness (in this case, the affiant) was stating the truth. Variations in a witness's testimony and any failure of memory throughout the course of discovery create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all. Issues concerning the credibility of witnesses and weight of the evidence are questions of fact which require resolution by the trier of fact. An affidavit may only be disregarded as a sham "when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact ... [and that party attempts] thereafter [to] create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins* at 657.

> [E]very discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence. *See Choudhry v. Jenkins*, 559 F.2d 1085, 1090 (7th Cir.) (summary judgment was improper even though party's testimony was "not a paradigm of cogency or persuasiveness," since it was not a "transparent sham"), *cert denied sub nom., Indiana v. Choudhry*, 434 U.S. 997, 98 S.Ct. 634, 54 L.Ed.2d 491 (1977). In light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made in an early deposition.

*Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir.1980).[6]

■ Applying these principles to the instant case, we find that the affidavit is not inherently inconsistent with the deposition testimony. The affidavit should have been considered with everything in the record resolving all doubts in favor of the nonmoving party. *See Adickes* and *Keiser*.

McIntyre's affidavit states that Tippens was his supervisor and worked in close proximity with him during the period when he was using Celotex's asbestos containing products. In his deposition, McIntyre was unable to state any specific instances when he was using a specific product while Tippens was standing next to him. Although a jury may find this discrepancy in McIntyre's testimony to affect his credibility or to diminish its persuasiveness, it is not so inherently inconsistent that the court must disregard the previous affidavit as a matter of law. When considering all the evidence in the record in a light most favorable to the nonmoving party, sufficient evidence exists to raise a genuine issue of material fact.

Tippens was the supervisor at ITT Rayonier and as supervisor he worked closely with the employees which he supervised. Celotex's asbestos containing products were used by the employees during the time Tippens was the supervisor. McIntyre's inability to identify a specific instance when he worked with Celotex's asbestos containing products while his supervisor was standing next to him does not create an irreconcilable conflict with his deposition testimony such that the court would be required to disregard his earlier testimony as a sham. McIntyre testified that his supervisor worked closely with him when he was using insulating products, of which some were manufactured by Celotex. McIntyre's inability to cite specific instances when he was using Celotex's asbestos containing products while his supervisor was in close proximity to him is not an irreconcilable conflict.

■ In *Van T. Junkins*, the deposition *clearly* stated in three places that their agreement contained no requirement to purchase a building in order to obtain the contract. The affidavit later stated that there was an agreement to purchase a building in order to obtain the contract. The contradictory affidavit in *Van T. Jun-*

---

**6.** The affidavit preceded the discrediting deposition in the present case. While it is much less likely that an affidavit which precedes a weak deposition is filed as a transparent sham than is a discrediting affidavit which is filed after a weak deposition which failed to establish a material issue of fact, we do not need to reach that conclusion today because we find that the affidavit and deposition are not inherently irreconcilable.

*kins* represents the type of irreconcilable conflict that amounts to a transparent sham which should be disregarded.

In comparison, McIntyre's statement is evidence that impeaches his memory, and impairs the probative weight of his testimony. Because assessing the credibility and weight of the evidence are questions of fact for the trier of fact, the District Court's grant of summary judgment was improper. We therefore reverse the District Court's grant of summary judgment and remand for further proceedings in light of *all* the evidence in the record viewed in a light most favorable to the nonmoving party.[7]

REVERSED and REMANDED.

HILL, Circuit Judge, specially concurring:

I agree with the majority's conclusion that this appeal is controlled by this court's decision in *Lane v. Celotex Corp.*, 782 F.2d 1526 (11th Cir.1985). Faced with this binding precedent, I agree that the district court's grant of summary judgment should be reversed. I concur specially to reiterate my dissatisfaction with the *Lane* holding. *See Lane v. Celotex Corp.*, 782 F.2d 1526, 1533 (11th Cir.1985) (Hill, J., dissenting).

The *Lane* decision drastically limits this court's holding in *Van T. Junkins & Associates v. U.S. Industries*, 736 F.2d 656 (11th Cir.1984). In *Van T. Junkins*, this court declared: "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimo-

ny." *Id.* at 657. The purpose of this rule is to spare the party requesting summary judgment the needless pain and costs of a law suit when a party's prior statements show no factual dispute exists. This rule further assures that frivolous law suits will not deluge the federal court system, otherwise consuming scarce judicial resources which would best be allocated to meritorious claims. The life of a frivolous suit should not be extended merely by a last minute affidavit which is contrary to a party's or an interested witness' admissions, unless there is some tangible basis for explaining the blatant inconsistencies.

If I were writing on a clean slate, I would conclude that Frank McIntyre was an interested witness due to the fact that, like William Tippens, he filed a similar suit seeking recovery for his exposure to asbestos and is represented by the same counsel that represents Mrs. Tippens. I would also conclude that McIntyre's affidavit was inherently inconsistent with his later deposition. The facts of this case, however, cannot be meaningfully distinguished from those in *Lane v. Celotex Corp.* Therefore, I concur.

---

7. This would include consideration of Mrs. Tippens' deposition as well. Mrs. Tippens stated that her husband's clothes were covered in a green colored dust which Mr. Tippens told her was asbestos. She also stated that they both came home covered in that dust when she worked at the shipyard as a welder and that during that time it was her understanding that the dust was asbestos. Deposition of Nell Tippens at 34, 49–50.

We make no formal ruling on the admissibility of this evidence because the District Court has not yet ruled on it. The trial court must first determine the admissibility of evidence before considering it in opposition to a motion for summary judgment. *Clemons v. Dougherty County*, 684 F.2d 1365 (1982); *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir.1980), *cert. denied*, 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981). We mention this here for completeness because we find it highly probative and likely to be held admissible under Fed.R.Evid. 804.